**Edward L. SCHARF in behalf of Laura Patricia Scharf, a minor, Plaintiff-Appellant,**

v.

**UNITED STATES ATTORNEY GENERAL, Defendant-Appellee.**

No. 77–2382.

United States Court of Appeals, Ninth Circuit.

May 29, 1979.

---

Edward L. Scharf, pro se.

Michael E. Quinton, San Diego, Cal., for defendant-appellee.

Before KENNEDY and ANDERSON, Circuit Judges, and HALL,* District Judge.

---

* Honorable Peirson M. Hall, United States District Judge for the Central District of California, sitting by designation.

KENNEDY, Circuit Judge:

Laura Patricia Scharf appeals from a district court order of summary judgment for the Government in an action she commenced for declaration of United States citizenship. 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201. We determine that summary judgment was not proper, and we reverse.

Scharf brought an action for declaratory judgment of citizenship under Section 360 of the Immigration and Nationality Act of 1952. 8 U.S.C. § 1503(a).[1] The complaint alleges that Scharf, who was born in Mexico, is entitled to a declaration of United States citizenship as the natural child of Edward L. Scharf, a native of California. Ramona Diaz, a Mexican citizen, was named as appellant's mother. The only issue is whether Edward is Laura's father.

The Government sought discovery under Fed.R.Civ.P. 35(a) of the blood groups of Laura, her natural mother and her putative father. The district court granted the motion and ordered Laura, Edward, and Ramona to submit to blood group testing. On completion of the tests, the Government moved for summary judgment. It supported the motion with the affidavit of the pathologist who had performed the test. The pathologist concluded from the test results that Edward was not Laura's natural biologic father. In opposing the motion, Laura submitted Edward's affidavit citing medical literature on the pitfalls of blood group testing and asserting that Laura had suffered from a disease that allegedly was responsible for the inconsistent test results.

Viewing these affidavits in a light most favorable to appellant, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hughes v. International Brotherhood of Teamsters, Local 683*, 554 F.2d 365 (9th Cir. 1977), we believe it was error for the district court to order summary judgment. A district court may not order summary judgment where there

---

1. Edward L. Scharf was appointed guardian ad litem for the purpose of prosecuting the action on behalf of Laura Patricia Scharf, a minor.

arises a genuine issue of material fact. *See, e. g., Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Diebold*, 369 U.S. at 655 (1962). The blood test results showed that appellant quite probably was not the natural child of the citizen parent, and this may be sufficient to support an ultimate judgment for the Government. *Oi Lan Lee v. Immigration and Naturalization Service*, 573 F.2d 592 (9th Cir. 1978). Those results, however, although highly persuasive of non-citizenship, were not conclusive in the face of Scharf's attempt to argue that the discrepancy was the result of a rare blood disease. The affidavit in support of this theory was hardly convincing, but it ·required the court to resolve an issue of fact based on conflicting expert testimony. This is not the court's function on summary judgment. *See, e. g., Diebold, supra.*

The parties are entitled to have the trier of fact, acting in that capacity, pass judgment on the sufficiency of the evidence. Unlike a case where there is no reasonable probability that the trier of fact could rule for the party opposing summary judgment, and where any such ruling would be based on surmise and speculation, *Neely v. St. Paul Fire Marine Insurance Company*, 584 F.2d 340 (9th Cir. 1978), here the trial court faced a real, although concededly not difficult, choice in determining whether or not to accept the expert testimony as credible and persuasive of the ultimate issue in the case.

Appellee contends that because Edward Scharf does not purport to be a medical expert and, presumably, is not competent to testify whether the blood trait was caused by a disease, the district court must disregard Edward's affidavit as insufficient as a matter of law to raise an issue of fact. Rule 56(e) requires that supporting and opposing affidavits be made on personal knowledge of the affiant, set · forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e). Insofar as Edward's affidavit discusses medical literature and links Laura's disease to the blood type discrepancy it appears defective.

Generally, however, such formal defects are waived absent a motion to strike or other objection, neither of which occurred here. *United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970) (Wright, J., concurring); *United States for use of Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964). Moreover, courts generally are much more lenient with the affidavits of a party opposing a summary judgment motion. *See, e. g., Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed. 142 (1970); *Arney v. United States*, 479 F.2d 653 (9th Cir. 1974). Read in light of these considerations, Edward's affidavit does not merely restate the pleadings; rather, it raises a genuine issue of material fact.

As a further challenge to the summary judgment, the appellant argues that the trial court erred in considering the results of blood tests taken from Ramona and Edward.· Our holding above is sufficient to reverse the summary judgment, but we deem it appropriate to address the subject of admissibility of the evidence in question since the trial court will be confronted with the argument upon remand.

The basis for appellant's argument to exclude the blood test results is that the tests were administered pursuant to the court's order and that such order was void because neither Ramona nor Edward were parties to the litigation as that term is used in Fed.R.Civ.P. 35. We agree the court's authority to order a physical examination under rule 35 was limited to Laura and that it would be error to order blood tests of Ramona or Edward even though they purport to be Laura's parents. *Dulles v. Quan Yoke Fong*, 237 F.2d 496 (9th Cir. 1956). *Accord Yee Szet Foo v. Dulles*, 18 F.R.D. 237, 239 (S.D.N.Y.1955).

Edward's status as guardian ad litem does not alter that result. *See Fong Sik Leung v. Dulles*, 226 F.2d 74 (9th Cir. 1955). In 1970 Fed.R.Civ.P. 35(a) was amended to allow the court to order a party to submit to a physical exam or blood test,

or to produce for examination a person in his custody or legal control. The Government incorrectly reads this amendment to authorize the blood tests in this case.

■ A note of the advisory committee explains that the extension to provide for a nonparty in custody or under control of a party is limited. It is intended to apply where a parent or guardian is suing to recover for injuries to a minor. It allows the court to order that the parent or guardian make a good faith effort to produce the minor for examination. It is not designed to cover this case.

*Beckwith v. Beckwith*, 355 A.2d 537 (D.C. Ct.App.1976), cited by the Government, comports with the above reading and does not extend the rule to cover the controversy here. There a husband sued his wife for divorce on grounds of adultery. The court ordered blood tests of a child born to the mother. That order was upheld, even though the child was not a party, because the child was in the mother's custody and control. Here, on the other hand Scharf's parents are within neither her custody nor her control.

■ It does not follow, however, that because the court lacked power to order blood tests of the parents that suppression of the test results is required. We note at the outset that nothing in the record shows that these nonparties subjected to the order sought to challenge it in any way. It might be inferred from this that no coercion existed and that Edward and Ramona voluntarily consented to the blood test.

■ Moreover, it is not at all clear that any fourth amendment violation occurred. Even on the assumptions that there was no consent for the tests and that the exclusionary rule of the fourth amendment extends to these civil proceedings, *but see United States v. Janis*, 428 U.S. 433, 447, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the plaintiff had no legitimate privacy interest that was invaded. Accordingly, she lacks standing to challenge the admissibility of the evidence obtained from the search of a third person. *Rakas v. Illinois*, —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). If that is the rule as to a constitutional violation, it follows with greater force that the appellant also lacks standing to object to evidence obtained in contravention of a statutory policy. Since no substantial rights of the parties were affected, error may not be predicated upon a ruling admitting the evidence. Fed.R.Evid. 103.

The order of the district court granting summary judgment is reversed and the case remanded for further proceedings.

REVERSED.